**In re Linda McMASTERS, Debtor.**

**Gordon & Hiller, Plaintiff,**

**v.**

**Linda McMasters, Neal Ossen, Chapter 7 Trustee, Defendants.**

**Bankruptcy No. 96–22167.
Adversary No. 99–2119.**

United States Bankruptcy Court,
D. Connecticut.

Oct. 12, 2001.

**87**

A. Reynolds Gordon, and Frank A. DeNicola, Jr., Law Office of A. Reynolds Gordon, Bridgeport, CT, for Plaintiff.

Charles A. Maglieri, Bloomfield, CT, for Debtor–Defendant.

Neal Ossen, Ossen & Murphy, Hartford, CT, for Trustee–Defendant.

*RULING ON PLAINTIFF'S MOTION TO BIFURCATE*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

Linda McMasters ("the debtor"), on June 26, 1996, filed a Chapter 7 petition, and Neal Ossen, Esq. ("the trustee") became the trustee of her estate. The debtor scheduled, as an exempt asset, a personal-injury action arising out of a 1994 accident. The trustee, on September 4, 1996, filed an objection to this exemption claim. On March 9, 1999, the court entered an order, on the trustee's motion, approving a settlement of the debtor's personal-injury action in the amount of $130,000. The trustee, after payment of litigation costs and fees, presently retains approximately $67,000 of the proceeds of such settlement ("the settlement proceeds"). The trustee, in January 2001, withdrew his objection to the debtor's claim of exemption, based upon Bankruptcy Code § 522(d)(11)(E) (compensation for loss of future earnings partially exemptible), thereby entitling the debtor to an exemption of $55,000.

Prior to her bankruptcy petition, the debtor had become indebted to a law firm, Gordon & Hiller ("the plaintiff"), for legal services rendered to her. To secure payment of this obligation, the debtor, who is a lawyer, on October 13, 1995, executed a document entitled "Assignment" ("the Assignment") which purported to "assign and transfer" to the plaintiff "as collateral security" for the unpaid legal fees "the proceeds of my personal injury case arising out of my 1994 accident." In an amended complaint filed August 9, 2001,[1] the plain-

---

1. The plaintiff filed the original turnover complaint on September 2, 1999.

tiff seeks recovery from the debtor and from the trustee its legal fee of $30,000 (plus interest) out of the settlement proceeds. The complaint asserts the Assignment gave the plaintiff either an ownership interest or a "fully-enforceable" security interest in the settlement proceeds and requests an order so "declaring." (Compl. at 6).[2]

## II.

In the present motion before the court, the plaintiff requests that its adversary proceeding be bifurcated to allow the plaintiff "to pursue its interest in the Debtor's exempt property" prior to proceeding against the estate assets. (Mot. at 1). The motion lists the following three reasons to support bifurcation:

(i) The Exempt Property totaling $55,000 is large enough to satisfy the [plaintiff's] claim in full; 1 and

(ii) The legal case against the Exempt Property is less complicated; 2 Bifurcation may save the Court (and the Trustee) considerable time.

(iii) By allowing the [plaintiff] to proceed against the Exempt Property first, the Court may preserve assets of the Debtor's Estate for unsecured creditors. For instance, if the [plaintiff] is successful in its efforts to collect from the Exempt Property, then no further litigation would be necessary, and the entire Estate Property ($12,000) could be distributed to unsecured creditors (after payment of administrative expense claims). Also, the estate would not have to incur the expense of defending the adversary proceeding.

1 The Estate Property totals only $12,000. Clearly not enough to satisfy the [plaintiff's] claim of $30,000,

plus interest. Another hearing/proceeding would be necessary.

2 Because of the Trustee's strong-arm powers, the [plaintiff], in order to prevail against the Estate's Property, must establish either an ownership interest, or a valid fully-perfected security interest in the Estate Property. However, in order to prevail against the Exempt Property, the [plaintiff] need only establish either an ownership interest, or a valid security interest as between the [plaintiff] and the Debtor. Perfection is not necessary to enforce the [plaintiff's] interest in the Exempt Property.

(Id.¶ 6.)

The debtor, but not the trustee, objects to the plaintiff's motion for bifurcation. She primarily contends that the undistributed proceeds exempted by the debtor remain property of the debtor's estate, and the plaintiff's claim should be defended by the estate's trustee and not by the debtor at her sole expense. She asserts this is mandated to protect the debtor's fresh start.

■ The court finds these arguments unpersuasive. Once the debtor's exemption claim to the $55,000 became noncontestable, the exempted property no longer constituted estate property, notwithstanding the agreement of the parties as stated in note 2 supra. *See, e.g., In re Bell,* 225 F.3d 203, 215–18 (2d Cir.2000) ("It is well-settled law that the effect of [a] self-executing exemption is to remove property from the estate and to vest it in the debtor."); *In re Gamble,* 168 F.3d 442, 444 (11th Cir.1999) (same). *See also* Bankruptcy Code § 522(c)(2) ("property ex-

---

**2.** The parties have agreed that the trustee retain possession of the debtor's $55,000 exemption and that the plaintiff's right, if any, to a portion of the settlement proceeds be resolved in the Bankruptcy Court.

empted ... is not liable" for prepetition debt, except "a debt secured by a lien ....."); *In re Scarpino*, 113 F.3d 338, 340 (2d Cir.1997) (explaining that while exempted property is generally "not liable" for prepetition debt, 11 U.S.C. § 522(c), there is "no such immunization with respect to any of the debtor's liabilities that were secured by liens on the exempt property ...").

### III.

■ Fed.R.Civ.P. 42(b), made applicable by Fed.R.Bankr.P. 7042, provides, in pertinent part: "The court, in furtherance of convenience or ... when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue...." "The interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency.... Bifurcation may therefore be appropriate where the evidence offered on two different issues will be wholly distinct ... or where litigation of one issue may obviate the need to try another issue." *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir.1996) (citation omitted). "The decision to bifurcate is within the discretion of the trial judge." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir.1990). After due consideration of the parties' arguments, the court grants the plaintiff's motion to bifurcate, and the court will first conduct a trial on the plaintiff's claim to payment out of the settlement proceeds which the debtor has exempted.

The clerk shall schedule a pretrial conference. It is

SO ORDERED.